Cite as 2020 Ark. App. 316

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-19-461

|  |  |
|---|---|
| HANKOOK TIRE CO., LTD., AND HANKOOK TIRE AMERICA CORP. | **Opinion Delivered:** May 20, 2020 |
| APPELLANTS | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. 15CV-12-114] |
| V. | HONORABLE TERRY SULLIVAN, JUDGE |
| ELMER PHILPOT | |
| APPELLEE | AFFIRMED |

## MIKE MURPHY, Judge

A jury in Conway County, Arkansas, found the appellants, Hankook Tire Company, Ltd. (Hankook), and Hankook Tire America Corporation (Hankook America) strictly liable for injuries that the appellant, Elmer Philpot, suffered after the failure of a Hankook tire caused him to lose control of the dump truck he was driving on State Highway 9 in Conway County on July 6, 2010.[1] Hankook now appeals the judgment, alleging that the circuit court erred by excluding an expert opinion, by refusing to strike a documentary exhibit, by denying Hankook and Hankook America's motions for directed verdicts, and by imposing sanctions for untimely discovery.

---

[1]Because Hankook and Hankook America jointly argue most of the issues in this appeal, we refer to them collectively as "Hankook" throughout most of the discussion. Where they raise separate arguments challenging the denial of their respective motions for a directed verdict, we refer to them separately.

This is the third attempted appeal in this case. We previously dismissed without prejudice Hankook's appeal from the circuit court's order imposing attorney's fees as a discovery sanction in *Hankook Tire Co., Ltd. v. Philpot*, 2016 Ark. App. 386, 499 S.W.3d 250. We held that the court's order awarding attorney's fees was not a final, appealable order because it did not contain an adequate certification that it was a final judgment under Ark. R. Civ. P. 54(b). *Id.* at 7–8, 499 S.W.3d at 253–54. Additionally, in 2018, we dismissed without prejudice Hankook's appeal from the judgment following the jury's verdict. The judgment was not final as to all claims and parties because there were no written orders concluding either Philpot's claim against his employer, Kenneth Hedrick or Mr. Hedrick's cross-claim against Hankook.[2] *See Hankook v. Philpot*, 2018 Ark. App. 546, at 4–5, 564 S.W.3d 555, 557–58.

The circuit court entered an amended judgment on February 19, 2019, that finally adjudicates all the claims in the case. Now that we have jurisdiction to decide the merits of the appeal, we affirm.

I. *Facts and Procedural History*

As we explained in our previous opinions, appellant Hankook Tire Company, Ltd., manufactures tires in South Korea and Europe, and appellant Hankook Tire America Corporation distributes the tires in the United States. Appellee Elmer Philpot was driving a dump truck that had a Hankook tire installed on the right front wheel. The tire failed as

---

[2]The circuit court granted Mr. Hedrick's motion for a directed verdict on Philpot's claim of negligence and dismissed him from the case. The court likewise granted motions to voluntarily nonsuit the crossclaims that Hankook and Mr. Hedrick had pursued against each other.

2

Philpot was driving on State Highway 9 on July 6, 2010, causing him to lose control of the truck and crash into a drainage ditch on the side of the highway. Philpot suffered severe injuries when the force of the impact in the ditch ejected him through the truck's windshield.

The case was initially filed in June 2012 in Conway County. Philpot later filed an amended complaint on March 14, 2014. Philpot alleged that Hankook manufactured the inherently defective steel-belted tire, "Hankook 385/65R 22.5 Super Single radial medium truck tire" (Hankook Model 240) and distributed it for sale in Arkansas. This tire was installed on the right front of a 1985 Ford 9000 dump truck, which was loaded with gravel and which Philpot was driving when the tire tread belt failed. Philpot alleged that Hankook was negligent in its design, testing, construction, and manufacture of the tire and in its failure to inspect the tire or warn of the defects that it knew or should have known to exist. Philpot further contended that the tire was unfit and unsafe for its intended use and purpose and that Hankook breached an implied warranty. In addition, Philpot sued Mr. Hedrick and Tommy New, the owner of the truck, alleging that they were negligent for failing to properly inspect and maintain the tire for his use.[3] All the defendants alleged that Philpot's own negligence contributed to his injuries, and they pursued cross-claims seeking apportionment of liability and damages.

Philpot sent interrogatories and requests for production to Hankook in December 2012. Philpot sought information and documents related to the Hankook Model 240 tire

---

[3]Additional defendants, Bayou Ridge Transport and Still Kickin, Inc., were dismissed from the case in an order entered on June 27, 2013.

that failed in his case as well as other similar Hankook steel-belted radial medium-truck tires. Specifically, Philpot requested documents regarding Hankook's tire-design process, manufacturing process, prior knowledge and testing concerning tread separations in steel-belted radial medium-truck tires, warranty return data and quality testing in those tires, and other similar incidents—including lawsuits—involving those tires. Hankook produced a few documents in timely fashion but generally limited its responses to the model of tire that failed in Philpot's case. Hankook also objected to several requests for production as seeking documents that were confidential or beyond the scope of the tire that was at issue in the case.

In August 2013, Philpot filed a motion to compel answers to his requests for production and for sanctions arguing that the information he sought was directly relevant to the issues before the court, and Hankook was manifesting a "stonewall approach." Specifically, Philpot argued that Hankook was objecting to any request about its general manufacturing process and was responding only to queries as to the specific model of tire on Philpot's dump truck, only as to the plant where that tire was manufactured, and only those documents created at or within a few years of the tire's manufacture. Philpot also alleged that the few documents that Hankook produced were in Korean and had not been translated.

Hankook resisted the motion to compel in a response filed in September 2013, contending that it was providing reasonably related responses, translating Korean documents into English, and otherwise legitimately objecting to revealing confidential trade secrets.

The circuit court conducted a hearing on the motion to compel on October 17, 2013. The circuit court agreed that Hankook should produce documents regarding other similar tires but declined to impose any sanctions until Hankook had the opportunity to respond to requests that were more limited in scope. Consequently, the circuit court ordered Hankook to respond to several requests for production using the definition of an industry term, "similar green tires," as a guide: "all tire sizes using the same inner liner compound and/or the same belt skim."[4] The circuit court also imposed time limitations as necessary, including, as most relevant here, the limitations that Hankook produce all documents reflecting legal action brought against Hankook for similar incidents between January 1, 1995, and December 31, 2005, and that Hankook produce copies of any and all complaints brought against Hankook for similar incidents between the forty-third week of 1998 (when the subject tire was manufactured) and December 31, 2005. The circuit court further ordered that Hankook produce a copy of its document-retention policy.

Hankook served its supplemental responses to Philpot's requests for production on January 10, 2014. While Hankook produced additional documents, several of its supplemental responses claimed that Hankook was no longer in possession of the requested documents for the time specified by the circuit court. Regarding complaints and other

---

[4]According to an expert's affidavit attached to Philpot's motion to compel, a leading cause of tread-belt separations is the infiltration of too much oxygen into the rubber "carcass" of the tire. A tire's inner liner compound and belt skim compound are substances that serve to limit the amount of oxygen that penetrates the rubber. According to the expert, "all tire sizes using the same inner liner compound and/or same belt skim compound [as the subject tire] need to be examined to fully evaluate the primary cause for the separation."

documents of legal action, Hankook responded that "to its knowledge it has not had information or documents that are responsive . . . in its possession" for the specified time.

On March 19, 2014, Philpot filed a "Motion for Sanctions for Spoliation and Concealment of Evidence" alleging that Hankook's supplemental responses demonstrated that it had destroyed quality-assurance and products-liability documents in contravention of its document-retention policy. Philpot also alleged that Hankook's national counsel, Michael Bai, concealed the existence of other lawsuits involving the Hankook Model 240A tire, which was a "green tire" in the same product line as the Hankook Model 240 tire that was installed on Philpot's dump truck. Specifically, Philpot alleged Hankook's supplemental responses failed to disclose a 2008 case in Talladega County, Alabama, *Robinson v. Hankook Tire Manufacturing, Ltd*. Philpot also alleged that Mr. Bai falsely represented during the hearing on Philpot's motion to compel that there had been no other lawsuits involving the Hankook Model 240 line of tires. As relief, Philpot requested, *inter alia*, that the circuit court submit a spoliation instruction to the jury and award reasonable attorney's fees.

The circuit court held a hearing on Philpot's motion for sanctions on September 18, 2014, and it issued findings of fact and conclusions of law on January 21, 2015. The circuit court ruled that due to "the multiple hearings that have been necessitated because of [Hankook's] obtuse and unnecessary abuse of the discovery process" and "to deter any future similar conduct," it was imposing Rule 37 sanctions in the form of reasonable attorney's fees. The circuit court found that the case had been pending for over two years, that Hankook initially responded to the multiple requests for information by providing a small

6

stack of documents primarily in Korean; and produced the documents in English only after a lengthy and exhaustive process. The letter order further stated the following:

> This Court previously made clear to the parties that it interpreted the Arkansas Rules of Civil Procedure and the discovery process to be quite liberal and the Court reiterated numerous times that it was the Court's belief that anything should be produced that could be relevant and possibly lead to discoverable information. This Court, at the request of Hankook, has even entered various confidentiality protective orders. This Court has previously rejected the narrow scope of discovery requested by Hankook and ordered a far more extensive scope of discovery than was sought by Hankook.
>
> . . . .
>
> Despite the wide scope of discovery under this Court's Order, Hankook produced virtually no pertinent documents in its January 10, 2014, supplemental response.

The circuit court noted that it was empowered to assess sanctions for discovery abuse pursuant to Rule 37 when a party's conduct necessitates the motion and, furthermore, that the circuit court has the inherent authority to police the conduct of the parties and attorneys appearing before it.

Addressing Philpot's specific arguments, the circuit court found that Hankook had indeed concealed evidence of other lawsuits, particularly the *Robinson* case from Alabama, by failing to include them in its supplemental responses. The court also found that Mr. Bai had falsely claimed during the hearing on Philpot's motion to compel that there were no other lawsuits concerning the Hankook Model 240 line of tires. Additionally, the circuit court found that Hankook had not adequately complied with its order to provide adjustment data for other tires, rejecting Hankook's reason for not doing so—that it understood Philpot's request to be narrower than the circuit court's order—as disingenuous. The court further found, however, that a spoliation instruction was not warranted because Hankook

7

did not destroy documents in contravention of its document-retention policy, as Philpot claimed.

The circuit court directed Philpot to prepare a verified motion for attorney's fees. In his motion, Philpot included billing records to support his request for reasonable attorney's fees of the three law firms representing him. Those requests were for $26,700 (Kelly Law Firm at $250 an hour); $35,700 (Kaster, Lynch, Farrar & Ball, LLP, at $350 an hour); and $13,412.50 (Gordon, Carruth & Virden, PLC, at $250 an hour), which totaled $75,812.50. In response, Hankook argued that the total fee sought was not reasonable because much of the work was unnecessary, excessive, and duplicative; that some was unrelated to discovery; and that a reasonable total fee would not exceed $25,000 (about one third of that requested).

The circuit court issued an order awarding attorney's fees on July 23, 2015, because Hankook's "conduct in obstructing discovery has been egregious . . . and to deter further such obstruction of discovery in this matter." The court, however, significantly reduced the hours billed by each of Philpot's attorneys. The fee awards were $18,787.50 to Kelly Law Firm; $17,125 to Kaster, Lynch, Farrar & Ball, LLP; and $7,112.50 to Gordon, Carruth & Virden, PLC—a total of $43,025. The circuit court found that this sanction, while much less than requested, was "justified under the circumstances."

The case proceeded to a six-day trial that concluded on September 8, 2016. Philpot introduced expert testimony through Troy Cottles, who opined that the tire's failure was caused by manufacturing defects. Hankook countered with evidence supporting its theory that the tire's failure was caused by a combination of improper maintenance and damage from an impact with an object on the road. The jury returned a verdict finding that

8

Hankook and Hankook America were strictly liable for Philpot's injuries, apportioning 90 percent of the fault to Hankook and 10 percent of the fault to Hankook America. The jury rejected Philpot's negligence claims against both Hankook companies as well as the owner of the truck, Tommy New.[5] As we indicate above, the circuit court entered the judgment on February 19, 2019.

Hankook and Hankook America now appeal arguing that reversal is warranted because (1) the circuit court abused its discretion when it excluded an opinion of its tire expert as untimely and unreliable; (2) the circuit court abused its discretion when it refused to strike a Hankook document-retention policy from an exhibit and refused to give a curative instruction to the jury; (3) the circuit court erred by denying Hankook America's motion for a directed verdict alleging that Philpot failed to introduce sufficient evidence that Hankook America sold the tire that failed in this case; (4) the circuit court erred by denying Hankook's motion for a directed verdict challenging the sufficiency of Philpot's evidence demonstrating a manufacturing defect in the tire; (5) the circuit court abused its discretion when it imposed sanctions against Hankook and awarded attorney's fees; and (6) the circuit court abused its discretion by awarding an excessive amount of attorney's fees.

II. *Standards of Review*

We set forth the applicable standard of review in our discussion of each of the issues that Hankook raises on appeal, but generally, we apply the abuse-of-discretion standard to circuit courts' decisions admitting or excluding evidence, imposing sanctions for failures to

---

[5]On August 30, 2016, the circuit entered an order granting partial summary judgment to Hankook on Philpot's claims alleging design defect, breach of warranty, breach of post–sale duty, and failure to warn.

comply with discovery, and awarding attorney's fees. *See Hopkins v. State*, 2017 Ark. App. 273, at 3, 522 S.W.3d 142, 144 (evidentiary rulings); *Coulson Oil, Inc. v. Tully*, 84 Ark. App. 241, 251, 139 S.W.3d 158, 164 (2003) (imposing sanctions); *Chrisco v. Sun Indus.*, 304 Ark. 227, 230, 800 S.W.2d 717, 719 (1990) (awarding fees). This court will not find an abuse of discretion, moreover, unless a circuit court acted "improvidently, thoughtlessly, or without due consideration." *Gerber Prods. Co. v. CECO Concrete Constr.*, 2017 Ark. App. 568, at 6, 533 S.W.3d 139, 143.

III. *Discussion*

A. Expert Testimony

On March 20, 2014, the circuit court issued a scheduling order directing Hankook to submit the report of its tire expert, James Gardner, on March 27, 2014. In the report Hankook submitted on that date, Mr. Gardner rendered the following opinions:

1. The subject tire is not defective or unreasonably dangerous either in design or manufacture. It was reasonably and properly designed and manufactured.

2. The fact that the tread and belts of a tire detach from the remainder of the tire does not mean it[']s defective. The vast majority of such detachments, including the one in this case, are caused by in-service damage and/or external conditions. The fracture surfaces in the subject tire are typical of a properly designed and manufactured tire that has sustained a tread/belt detachment resulting from in-service damage.

3. The tread/belt detachment in the subject tire was the result of sustaining a road hazard injury to the tire and subsequent operation of the tire in a damaged condition after injury. The road hazard injury tore wires loose from the surrounding rubber and fractured steel wires. A radial split torn inner liner allowed air to migrate into the tire structure causing intra-carcass pressurization and a breakdown of the [tire's] adhesion system causing further separation and a detachment of the tread and belt plies.

At his deposition over two years later, Mr. Gardner testified that he had reached an additional opinion that the subject tire had been installed on a rim that was too wide, causing additional stress on the shoulder of the tire and contributing to the impact damage that caused the tire to fail. Philpot filed a motion to exclude Mr. Gardner's additional opinion, arguing that it was untimely and unreliable according to the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The circuit court granted the motion after hearing oral argument on Philpot's motion, ruling that the opinion was "untimely, a surprise, and [did] not satisfy the *Daubert* standard."

On appeal, Hankook argues that the circuit court erred by excluding Mr. Gardner's additional opinion as untimely because it was disclosed at his deposition nearly five weeks prior to trial and was closely related to his timely disclosed primary opinion that impact damage was responsible for the tire's failure. Hankook further argues that the circuit court erred by applying the factors from *Daubert* to exclude Mr. Gardner's new opinion as unreliable. The *Daubert* framework, it says, applies only to opinions based on novel scientific theories and not to opinions, like Mr. Gardner's, that are based on "experience, training, observations, and generally accepted testing practices." Even so, Hankook asserts that Mr. Gardner's additional opinion was reliable under *Daubert* because Mr. Gardner had "outstanding credentials" in the tire industry and his opinion was supported by published literature. Finally, Hankook contends that the exclusion of Mr. Gardner's additional opinion was prejudicial because it "stripped [Hankook] of the opportunity to fully challenge the elements of [Philpot's] manufacturing defect claim."

In response, Philpot insists that the additional opinion was untimely because Hankook disclosed it well after the date specified in the scheduling order, and in any event, the opinion was unreliable under *Daubert* because "Mr. Gardner had not completed his opinion, had not tested it, had not researched it, had not measured it, could not clearly testify regarding it, and was unable to support it by publication." Philpot argues that because the circuit court did not abuse its discretion by excluding Mr. Gardner's opinion that the size of the rim contributed to the tire's failure, this court should affirm.

Rule 16 of the Arkansas Rules of Civil Procedure allows courts to direct the parties to appear for a conference to consider, among other things, "such . . . matters as may aid in the disposition of the action." The rule further requires the court to "make an order that recites the action taken at the conference," and that "such order, when entered, controls the subsequent course of the action, unless modified to prevent manifest injustice." A scheduling order under Ark. R. Civ. P. 16 "control[s] the subsequent course of the litigation" because its "primary purpose" is to keep litigation moving forward and to advise the parties about the deadlines that they are expected to meet." *Rush v. Fieldcrest Cannon, Inc.*, 326 Ark. 849, 855, 934 S.W.2d 512, 515 (1996). Additionally, a party's "failure to meet these deadlines undermines the goals of the scheduling order and prejudices the other side, which is also subject to discovery deadlines." *Id*.

Arkansas Rule of Civil Procedure 37(b)(2)(B) provides, moreover, that if a party fails to obey an order to provide discovery, the circuit court in which the action is pending "may make such orders [regarding] the failure as are just," including "[a]n order . . . prohibiting [the party] from introducing designated matters into evidence[.]" The imposition of

12

sanctions for the failure to make discovery rests in the circuit court's discretion, and its exercise of discretion in granting Rule 37 sanctions for discovery violations is "repeatedly upheld." *Nat'l Front Page, LLC v. State ex rel. Pryor*, 350 Ark. 286, 291, 86 S.W.3d 848, 850 (2002). Finally, "the circuit court need not find a willful or deliberate disregard of discovery rules before imposing Rule 37 sanctions." *Id*.

As indicated above, the circuit court entered a scheduling order that required Hankook to submit the report of its tire expert, Mr. Gardner, on March 27, 2014. Although Mr. Gardner measured the rim on October 9, 2013, his report did not include an opinion suggesting that the size of the rim was too wide for the subject tire or that the width of the rim contributed to the tire's failure. Indeed, as stated, Mr. Gardner did not disclose that opinion until his deposition shortly before the trial was held in 2016. Under these circumstances, the circuit court did not abuse its discretion by excluding Mr. Gardner's additional opinion as a sanction for Hankook's failure to disclose it in the report filed on March 27, 2014.

In any event, the trial court did not err in finding that the opinion was also unreliable. Rule 702 of the Arkansas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise." In *Daubert*, the Supreme Court held that Rule 702 requires a circuit court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Before admitting expert testimony, therefore, a circuit court must determine whether the expert is

indeed proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Arrow Int'l, Inc. v. Sparks*, 81 Ark. App. 42, at 51, 98 S.W.3d 48, 54 (2003).

According to *Daubert*, the reliability determination involves "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid, and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. A circuit court generally considers whether the scientific or technical theory "can be or has been tested," as well as whether the theory "has been subjected to peer review and publication." *Arrow Int'l*, 81 Ark. App. at 51, 98 S.W.3d at 54.

Contrary to Hankook's suggestion, the circuit court's obligation to determine reliability under Rule 702 "applies to all expert testimony," even that which is based on personal observation and experience. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 150–52 (1999); *see also Arrow Int'l*, 81 Ark. App. at 52, 98 S.W.3d at 55 (noting that while it was not necessary to apply *Daubert* to an expert's testimony, the circuit court nonetheless conducted a reliability inquiry). Consequently, the *Daubert* factors "neither necessarily nor exclusively apply to all experts, or in every case," and the law grants a circuit court "the same broad latitude when it decides how to determine reliability as it enjoys [with] respect to its ultimate reliability determination." *Arrow Int'l*, 81 Ark. App. at 52, 98 S.W.3d at 55. Indeed, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*.

14

The circuit court did not abuse its discretion when it determined that Mr. Gardner's new opinion was unreliable. At his deposition, Mr. Gardner testified that he was not aware of any articles that specifically addressed whether an oversized rim could contribute to a tire's failure. He also admitted that he had not done any testing to support his theory and had not quantified his opinion. Furthermore, the industry handbook that Hankook claims supports Mr. Gardner's opinion, *Care and Service of Truck and Light Truck Tires*, does not appear to say anything about an oversized rim increasing the load on the shoulders of a tire, much less how such loading can contribute to impact damage under the conditions of this case. Considering that the untimeliness of Mr. Gardner's additional opinion also undermines its reliability, the circuit court did not abuse its discretion by excluding it as unreliable.

### B. The Document-Retention Policy

As set forth above, the circuit court issued findings of fact and conclusions of law that, in part, rejected Philpot's argument that Hankook destroyed documents in violation of its document-retention policy. Specifically, the circuit court ruled that Hankook's Document Management Regulations ("DM Regulations"), which Philpot argued required permanent retention of the documents he requested, did not "govern[] the production of documents related to [Philpot's] Motion to Compel." Rather, the circuit court found that another policy, the Quality and Environment Record Maintenance Management Regulations ("QE Regulations"), "provide[d] for the retention periods of those documents which [Philpot] seeks." Those regulations allowed those documents to be destroyed after five years, and there otherwise was "no evidence . . . that Hankook Tire destroyed

15

documents pursuant to [those regulations] after receiving notice of [Philpot's] accident or after the [order compelling discovery]."

Hankook's document-retention policies were also an issue during the trial. During his cross-examination of Yunchang Chun, a mechanical engineer at Hankook, Philpot attempted to ask Mr. Chun about the five-year document-retention policy in the QE Regulations, whereupon Hankook's counsel approached the bench to ensure that Philpot was not actually going to examine Mr. Chun about Hankook's other policy, the DM Regulations, which, according to counsel, the circuit court had previously ruled "did not apply in this case." After he was satisfied that Philpot was going to ask only about the QE Regulations, Hankook's counsel indicated that he had no objection to the question.

After briefly questioning Mr. Chun about the five-year QE Regulations, Philpot offered exhibit 23, which appeared to be only a copy of the QE Regulations. Hankook did not object, and the exhibit was admitted. Philpot displayed page 67A of the exhibit, which was a portion of the *other* policy—the DM Regulations—on the overhead projector in the courtroom. He also examined Mr. Chun regarding the permanent retention of documents under that policy. Hankook did not object to Philpot's display of the DM Regulations or his questions to Mr. Chun. Rather, Hankook asked its own questions concerning the permanent-retention policy during his redirect examination.

Before proceedings resumed the following day, Hankook objected to the admission of exhibit 23 because it included the DM Regulations. Hankook argued that the DM Regulations were irrelevant because the circuit court previously determined that they "[did] not apply." The circuit court declined to remove the exhibit or provide a curative

16

instruction to the jury, observing that the DM Regulations "[were] on the screen for about 30 minutes," and "there was no objection."

Philpot's counsel subsequently argued during his closing argument that the jury "heard testimony Hankook destroyed documents related to quality assurance[,]" and "[i]t was a bombshell moment during trial when I showed you the document retention policy. Everything that Hankook destroyed was supposed to be permanently retained under the policy."

On appeal, Hankook argues that the admission of the DM Regulations and failure to give a curative instruction were erroneous, and prejudice should be presumed. Philpot responds that Hankook failed to preserve these arguments for appellate review by objecting at the earliest opportunity. Philpot is correct.

"An appellant waives an argument on appeal by failing to object at the first opportunity." *Herrington v. Ford Motor Co.*, 2010 Ark. App. 407, at 13, 376 S.W.3d 476, 483. We are sympathetic to Hankook's argument that the DM Regulations' concealment behind the QE Regulations delayed an objection. Nonetheless, Hankook still failed to object at its first opportunity under the circumstances—when a page from the DM Regulations was displayed for the jury. Thus, Hankook has failed to preserve this issue for appellate review.

Even so, Philpot correctly argues that Hankook has misconstrued the circuit court's earlier ruling about the applicability of the DM Regulations. The circuit court found only that Hankook's failure to produce documents did not warrant a sanction for discovery abuse. It did not, as Hankook would have it, exclude the DM Regulations as irrelevant to the

17

issues at trial. Accordingly, even if Hankook had objected at its first opportunity, its argument here lacks substantive merit.

C. Sufficiency of the Evidence

1. *Whether Hankook America sold the tire*

Hankook America argues that the circuit court should have directed a verdict in its favor because Philpot failed to prove that Hankook America sold the Hankook Model 240 tire that failed in this case. More to the point, Hankook America appears to argue that evidence that it is the distributor of Hankook tires in this country, alone, is insufficient to support the verdict. Because a jury could reasonably infer that Hankook America sold the subject tire, we find no error in the circuit court's denial of Hankook's motion for a directed verdict.

"In determining whether a directed verdict should have been granted, [the court] reviews the evidence in a light most favorable to the party against whom the verdict is sought and give[s] it its highest probative value, taking into account all reasonable inferences deducible from it." *Morehart v. Dillard Dep't Stores*, 322 Ark. 290, 292, 908 S.W.2d 331, 333 (1995). Additionally, "[a] motion for a directed verdict should be granted only if there is no substantial evidence to support a jury verdict." *Id.* "When the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented[.]" *Id.*

Viewed in the light most favorable to Philpot, the following testimony from Mr. Chun raises a reasonable inference that Hankook America sold the tire that failed in this case:

Q.  . . . Now Hankook Korea, the Korean Company, Hankook Tire Corporation, LTD, they designed the tire, correct?

A.  Yes.

Q.  And they manufactured the tire, correct?

A.  Correct.

Q.  Okay.  When they get done manufacturing the tire, they put it on big crates . . . [a]nd they ship it to the United States?

A.  I don't know whether they put it in a big crate or not, but they ship it to the U.S.

Q.  Fair enough. And it's received by Hankook America Tire Company, correct?

A.  Yes.

Q.  And it's sold in America by Hankook America Tire Company, correct?

A.  That's correct.

Accordingly, we hold that the circuit court did not err by denying Hankook America's motion for a directed verdict.

### 2. *Whether the tire had a manufacturing defect*

Hankook next argues that Philpot failed to introduce substantial evidence of a manufacturing defect in the Hankook Model 240 tire that failed in his case. Hankook contends, in particular, that the circuit court should have granted its motion for directed

19

verdict because reliable conclusions regarding manufacturing defects and causation could not be drawn from the remnants of the tire that were left after the accident. According to the standards set forth above, Hankook is mistaken.

Philpot introduced expert testimony that raised a reasonable inference that the tire failed because of manufacturing defects. Troy Cottles testified that there was a tread-belt separation that was due to "inadequate bonding between and among the belts" that occurred during the curing process. He also opined that inadequate splicing of the steel belts and a too-thin inner liner contributed to the tread-belt separation, and the tire "should have been scrapped" before leaving the plant. Mr. Cottles ultimately concluded that the manufacturing defects that he noted in his testimony "all contributed to [the] tire's failure." Therefore, because this testimony raises a reasonable inference that manufacturing defects contributed to the tire's failure—and Hankook's challenges to the weight of that testimony is a matter for the fact-finder—the circuit court did not err in denying Hankook's motion for a directed verdict.

D. Attorney's Fees as a Sanction for Discovery Violations

Hankook next argues that the circuit abused its discretion when it awarded attorney's fees as a sanction for Hankook's alleged discovery abuses. Specifically, Hankook contends that the circuit court erred by finding that it failed to disclose the *Robinson* case in its supplemental responses to Philpot's requests for production; that Mr. Bai falsely represented that there had been no lawsuits involving the Hankook Model 240 line of tires; and that Hankook had otherwise engaged in abusive discovery by, among other things, initially producing documents in only Korean. Philpot argues in response that the circuit court did

20

not abuse its discretion because the court "assessed sanctions based on Hankook's overall unreasonable discovery conduct throughout two years of litigation" that Philpot alleges "denied [him] virtually all meaningful discovery." He also argues that the circuit court appropriately imposed sanctions based on Mr. Bai's alleged misrepresentations about other lawsuits. For reasons that follow, we hold that the circuit court did not abuse its discretion by awarding fees as a sanction for Hankook's failure to comply with the circuit court's order under Ark. R. Civ. P. 37(b)(2)(E).

As an initial matter, Hankook's challenges to the circuit court's findings about the severity of its conduct have some merit. First, it does not appear that Hankook concealed the *Robinson* case from either Philpot or the circuit court.[6] Hankook's initial responses denying that it had documents pertaining to legal action were limited to "the subject model and size tire" that failed in Philpot's case, and *Robinson* involved a different—albeit related— model tire. Moreover, *Robinson*, which was filed in 2008, was three years beyond the 2005 limit that the circuit court imposed in its order compelling supplemental responses to request for production No. 39, which asked for documents on pertinent "legal action" brought against Hankook, and request for production No. 40, which asked for copies of pertinent "complaints." The circuit court also overlooked that Hankook *did* disclose the *Robinson* case when it supplied a deposition transcript in its supplemental response to a request for

---

[6]In his motion for sanctions, Philpot alleged that Hankook, and Mr. Bai in particular, were nearly sanctioned by the court in *Robinson* for failing to disclose another lawsuit, *White v. Hankook*, in that case. Although the circuit court here faults Hankook for failing to disclose "multiple lawsuits," it identifies only *Robinson*. Even if we assume that the circuit court reference to multiple lawsuits included *White v. Hankook*, there is no finding that *White* fell within the time parameters imposed in the order compelling discovery.

production that was not bound by the 2005 date restriction the court imposed for Hankook's other responses.

Additionally, Mr. Bai's statement to the circuit court representing that there were no other lawsuits apparently was limited to other cases involving only the same Hankook Model 240 tire that failed in Philpot's case, rather than the entire Hankook Model 240 *line* of tires—including the Hankook Model 240A in *Robinson*—as Philpot argued in his motion for sanctions. While it may be frustrating that Mr. Bai was so circumspect, it does not appear that his statement misled the circuit court. The order compelling discovery still presumes that lawsuits involving "similar green tires" may exist, as it collectively ordered Hankook to supplement its responses with documents regarding complaints and legal action involving "similar green tires" before 2005.

Furthermore, to the extent that Hankook's initial production of documents in Korean factored into the circuit court's finding of discovery abuse, there was a basis for Hankook to believe, in good faith, that it was not bound to translate the documents before producing them. There is no Arkansas case interpreting Ark. R. Civ. P. 34 to impose such a requirement, and federal courts have held that the federal version of the rule does not bind producing parties to translate documents before responding to requests for production:

> Although case law on this issue is . . . relatively sparse, the courts that have ruled on it have found that the party responding to document demands are under no obligation under the Federal Rules to translate documents produced. The seminal case addressing this translation issue was *In re Puerto Rico Electric Power Auth.*, 687 F.2d 501 (1st Cir. 1982)[,] where the First Circuit overturned an order from the district court directing the party producing Spanish documents to translate, or pay for translating, all Spanish documents produced during discovery. . . . The First Circuit determined that Rule 34, which governs the production of documents, did not provide the district court with any authority to direct the party producing documents

22

to translate them and that such orders violate the well–accepted principle that each party bear the ordinary burden of financing his own suit.

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 274 F.R.D. 437, 441–42 (E.D. N.Y. 2011) (internal quotation marks omitted).

Nevertheless, the circuit court ultimately did not abuse its discretion by finding that a Rule 37 sanction was warranted for Hankook's failure to obey its order compelling discovery. The circuit court found—and Hankook does not dispute—that Hankook failed to obey the court's order when it omitted the adjustment data for thirty-three models of "similar green tires" from its supplemental responses. Accordingly, the circuit court did not abuse its discretion by finding that Hankook's violation of its order warranted sanction, and that under Ark. R. Civ. P. 37(b)(2)(E), Hankook was required to pay reasonable expenses, including attorney's fees, caused by the failure.

## E. The Amount of Attorney's Fees

Hankook finally argues that even if the circuit court did not err by imposing attorneys' fees as a sanction, the amount of fees that it was ordered to pay, $43,025, "was excessive and an abuse of discretion." We disagree.

"[A]lthough there is no fixed formula [for] determining the computation of attorney's fees, the courts should be guided by recognized factors in making their decision." *Chrisco*, 304 Ark. at 229, 800 S.W.2d at 718. Those factors include

> the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer.

23

*Id.*, 800 S.W.2d at 718–19. Because the circuit court is intimately acquainted with the record and the quality of the legal service rendered, this court "usually recognize[s] the superior perspective of the [circuit court] in assessing the applicable factors." *Chrisco*, 304 Ark. at 230, 800 S.W.2d at 719. "Accordingly, an award of attorney's fees will not be set aside absent an abuse of discretion by the [circuit] court." *Id.*

While we may disagree that certain instances of Hankook's conduct warranted sanction, we reiterate that the abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision. *Reynolds v. State*, 2018 Ark. App. 8, at 7, 538 S.W.3d 223, 227. Rather, there must be a showing that the circuit court acted "improvidently, thoughtlessly, or without due consideration." *Id.* Hankook has not made that showing with respect to the amount of attorney's fees the circuit court awarded.

It is apparent that the circuit court considered the *Chrisco* factors when it reduced or struck several of the itemized fees as "excessive and duplicative" and found a fee of $250 an hour reasonable for all of Philpot's attorneys. Indeed, the overall reduction from the initial fee request of $75,000 to $43,025 was substantial. Considering also the circuit court's superior position to judge Hankook's conduct throughout the litigation, we cannot say that awarding $43,025 in fees was an abuse of discretion. Accordingly, we affirm.

IV. *Conclusion*

The circuit court did not abuse its discretion when it did not allow Hankook's expert to testify about an opinion that was not timely disclosed or reliable. Hankook has failed to preserve its argument challenging the admission of the Document Management Regulations

24

for judicial review, and the motions for directed verdict by Hankook and Hankook America lack merit. The circuit court did not abuse its discretion, moreover, by awarding Philpot attorney's fees in the amount of $43,025 for Hankook's failure to timely provide discovery

Affirmed.

GRUBER, C.J., and BROWN, J., agree.

*Hardin, Jesson & Terry, PLC*, by: *Kynda Almefty* and *Carol Ricketts*, for appellants.

*Dobson Law Firm, P.A.*, by: *R. Margaret Dobson*; *Kelly Law Firm, P.A.*, by: *Jerry Kelly*; *Kaster-Lynch, P.A.*, by: *Bruce Kaster*; and *Gordon, Caruth & Virden, P.L.C.*, by: *Ben Caruth*, for appellee.