

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–598

| | |
|---|---|
| MARQUITTA J. CORBIN<br>APPELLANT<br><br>V.<br><br><br>BAPTIST HEALTH, INC., D/B/A<br>BAPTIST HEALTH MEDICAL<br>CENTER-LITTLE ROCK<br>APPELLEE | Opinion Delivered April 20, 2016<br><br>APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT,<br>SIXTEENTH DIVISION<br>[NO. 60CV-13-1436]<br><br>HONORABLE MORGAN E. WELCH,<br>JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This is a medical–malpractice case. The sole issue on appeal is whether the trial court abused its discretion in excluding expert testimony of one of appellant Marquitta Corbin's treating physicians. We find no error and affirm.

On September 8, 2011, Corbin had a total thyroidectomy at Baptist Health Medical Center ("Baptist") in Little Rock. The surgery was performed by Dr. Scott Marotti, a general surgeon. Postoperatively, Corbin was admitted to the observational unit at Baptist. That afternoon, she suffered respiratory arrest and a code blue was called. Dr. Michael Bauer, another surgeon, responded to the call, opened the surgical incision from earlier in the day, and discovered that a hematoma, or blood clot, was obstructing Corbin's airway causing the severe swelling. After evacuating the hematoma, Corbin was successfully intubated, and she was taken back to the operating room for further treatment by Dr. Marotti. Corbin was

SLIP OPINION

ultimately transferred to the intensive care unit, where she received treatment by Dr. Robert Searcy, a critical-care specialist. She was discharged from the hospital on September 29, 2011, with her remaining impairment being cortical blindness.

On April 1, 2013, Corbin—proceeding pro se—filed a complaint of medical negligence in the Circuit Court of Pulaski County, naming Baptist as defendant. Baptist filed its answer on April 22, 2013. Corbin subsequently retained legal counsel, who filed various amended and substituted complaints on her behalf, all of which were timely answered by Baptist. Corbin alleged that her blindness was the result of oxygen deprivation during the arrest, which would not have occurred absent the negligence of her nurses. Corbin contended that the nurses failed to appropriately monitor her in the observation unit, and if they had, they would have noticed signs and symptoms of the postoperative bleeding and the blood clot that led to the code blue. Corbin contended that the bleeding occurred over the course of several hours and was a slow-developing hematoma. Baptist argued that the bleeding occurred acutely just prior to the code blue, and therefore, was noticed quickly and appropriately by the nursing staff. The trial was set, but the parties agreed to continue the trial because it would take longer than the allotted days. The circuit court made no changes in discovery deadlines.

Dr. Searcy was deposed on November 19, 2014, after the discovery deadline. On December 8, 2014, Corbin's counsel amended its expert-witness designations to include Dr. Searcy. On February 10, 2015, Baptist filed a motion in limine to exclude the expert testimony of Dr. Searcy. A similar motion was filed by Corbin as to two other treating

SLIP OPINION

physicians, Dr. Marotti and Dr. Bauer. The court heard the parties' motions on February 25, 2015. The trial court granted in part both Corbin's motion in limine and Baptist's motion in limine. Doctors Marotti, Bauer, and Searcy were allowed to testify, but their opinions were limited to those formed by their respective observations.

A jury trial was held in the Pulaski County Circuit Court from March 9 through 18, 2015. The jury rendered a defense verdict in favor of Baptist, and the trial court entered the judgment on April 3, 2015. This timely appeal followed.

The sole point on appeal is whether the trial court acted within its discretion in limiting the testimony of Dr. Robert Searcy. Corbin contends that the trial court abused its discretion in preventing Dr. Searcy from offering expert testimony at trial. The trial court limited the testimony of Dr. Searcy, the critical-care specialist who treated Corbin, to his own factual involvement and observations. It is well settled that we review the admission of expert testimony under an abuse-of-discretion standard. *Crowell v. Barker*, 369 Ark. 428, 255 S.W.3d 858 (2007) (citing *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997)). In discussing our standard of review for evidentiary rulings, we have said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Advanced Envtl. Recycling Techs., Inc. v. Advanced Control Sols., Inc.*, 372 Ark. 286, 275 S.W.3d 162 (2008) (citing *Yeakley v. Doss*, 370 Ark. 122, 257 S.W.3d 895 (2007)). To have abused its discretion, the circuit court not only must have made an error in its decision, but also must have acted "improvidently, thoughtlessly, or without due consideration." *Poole v. Poole*, 2009 Ark. App. 860, at 12, 372 S.W.3d 420, 428.

Corbin argues that in the trial court's decision to limit Dr. Searcy's testimony to his own factual involvement in her care, the court failed to provide any reasoning on the record, and thus, acted improvidently, thoughtlessly, or without due consideration. We do not agree. At the pretrial hearing, the trial court limited Dr. Searcy's testimony to his own factual observations, just as it had limited the other two doctors' testimony. This ruling was entirely consistent with the trial court's ruling on a similar motion filed by Corbin to limit the testimony of two other treating physicians. The trial court stated that Dr. Searcy had made a specific representation to Baptist's counsel during his deposition that he did not intend to be an expert witness, and that it was "sandbagging" to have him later agree to testify as an expert. We find that the trial court did not abuse its discretion by limiting Dr. Searcy to giving only factual testimony since he had not been timely disclosed as an expert, and he expressly testified under oath that he did not intend to come to trial and give expert opinions.

Baptist notes in its brief that although it did disclose Dr. Searcy as an expert witness prior to the discovery deadline, that action was taken "prophylactically." Dr. Searcy had already been disclosed as a fact witness by Corbin, but Baptist had been unable to depose Dr. Searcy despite asking for the opportunity to do so for five months prior to the discovery deadline. Due to Rule 35 of the Arkansas Rules of Civil Procedure, counsel for Baptist was prohibited from any ex parte communication with Dr. Searcy regarding his treatment of Corbin without her express consent. Therefore, Baptist's counsel explained that, without knowing what Dr. Searcy might say or be willing to say, Baptist—out of an abundance of caution—characterized him as an expert just prior to the deadline. It was only after taking the

deposition of Dr. Searcy that it was learned that he had no intention of giving expert testimony at trial, although Corbin herself later tried to offer him as an expert, necessitating the motion in limine at issue. However, none of this has any bearing on the fact that Dr. Searcy was not properly disclosed as an expert and expressed in his deposition a desire not to testify as an expert at trial. Baptist argues that its prior designation of Dr. Searcy is of "no moment." We agree.

The trial court's ruling was well thought out and was specifically designed to be consistent with its ruling on Corbin's motion to limit the testimony of Doctors Marotti and Bauer. It is apparent from the transcript that the trial court made a conscious effort to be consistent in its rulings for both sides on virtually identical issues. We cannot find abuse in the circuit court's application of its discretion. Accordingly, we affirm.

Affirmed.

WHITEAKER and HOOFMAN, JJ., agree.

*Huffman Butler, PLLC*, by: *Bryan R. Huffman*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *J. Adam Wells* and *Brett W. Taylor*, for appellee.