Cite as 2025 Ark. App. 327

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-844

| | |
|---|---|
| JAMIE GRAY, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF PATRICIA IRENE BISHOP<br><br>APPELLANT<br><br>V.<br><br>E.R.R.S., INC., D/B/A PINK BUD HOME FOR THE GOLDEN YEARS, INC.<br><br>APPELLEE | Opinion Delivered  May 21, 2025<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT<br>[NO. 66GCV-20-169]<br><br>HONORABLE R. GUNNER DELAY, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Jamie Gray, individually and as special administrator of the estate of Patricia Irene Bishop ("Estate"), appeals a Sebastian County Circuit Court order granting summary judgment to appellee Pink Bud Home for the Golden Years, Inc. ("Pink Bud"), in a medical-malpractice action against the nursing home over Bishop's death. The circuit court granted summary judgment because the Estate failed to offer expert testimony to support the proximate-cause element of its medical-malpractice claim. On appeal, the Estate argues that the circuit court erred in granting summary judgment because expert testimony was not required. We affirm.

On July 27, 2018, seventy-five-year-old Bishop was admitted to Pink Bud as a resident. She had previously been a resident of Pink Bud from October 16, 2016, through March 1, 2017. Bishop's readmission on July 27, 2018, was preceded by a hospital stay for respiratory failure. Upon admission, Bishop's diagnoses included acute and chronic respiratory failure, unspecified hypoxia or

hypercapnia; dysphagia oropharyngeal phase; hyperlipidemia; gastroesophageal reflux disease; diabetes mellitus without complications; chronic obstructive pulmonary disease ("COPD"); hypertension; depression; chronic pain; allergies; hormone replacement therapy; hypokalemia prevention; neuropathy, and constipation. On the day of her admission to Pink Bud, Bishop signed a do-not-resuscitate ("DNR") order stating her preference for no CPR, no defibrillation, and no intubation. On August 2, and then again on August 7, a physician's order was placed for a hospice consultation. A subsequent physician's order placed on August 8 states Bishop was admitted to Heart of Hospice with COPD. The reason for her hospice admission is noted as shortness of breath; her primary diagnosis indicates cardiopulmonary disease and states that she is oxygen dependent. The hospice notes also state that Bishop has pulmonary congestion evidenced by abnormal lung sounds or diagnostic tests, among other things. Further, during her initial visit to hospice, Bishop confirmed her DNR, treatment, and hospitalization preferences.

On October 18, Bishop was found on the floor of her room at Pink Bud. Following an evaluation, she was found to have no bruises or redness or other injuries. However, hospice was called to provide pain medication and a breathing treatment. That evening, Bishop was found to be diaphoretic (sweating excessively) and nonverbal. Bishop's daughter, Jamie Gray, was contacted and informed of her mother's respiratory condition; she insisted that Bishop be taken to the hospital, despite hospice policy and Bishop's life-saving preferences. Consequently, Bishop was transported to the emergency room at Sparks Regional Medical Center via ambulance. According to the hospital report, when she arrived in the emergency room, Bishop was lethargic, not very responsive, and in respiratory distress requiring intubation. Bishop went into cardiac arrest and required CPR and

epinephrine to restore her pulse. She was assessed with acute-on-chronic hypoxic and hypercapnic aspirin failure, likely secondary to healthcare associated pneumonia.

On October 23, Bishop was admitted to Sparks Regional Medical Center - Select Specialty Hospital, an acute long-term-care hospital facility. Upon admittance, Bishop remained in acute-on-chronic hypercapnic respiratory failure, likely secondary to pneumonia. On October 30, Bishop's medical records state that she had "worsening aeration present in left upper lobe and left lung base." On November 3, records note a mucus plug with left lung collapse; pneumonia, likely healthcare associated; acute-on-chronic hypercapnic respiratory failure; COPD; atrial fibrillation; hypertension; and other health concerns. A November 5 report stated that Bishop had to be intubated over the weekend due to a left lung collapse. The assessment/plan stated that she suffered from acute hypercapnic respiratory failure, most likely due to pneumonia on initial admission, and that her condition was declining.

Bishop died on November 17. The discharge note/death summary contributes her cause of death to "cardiorespiratory arrest, likely 2/2 acute on chronic hypercapnic and hypoxic respiratory failure, persistent left lung pneumothorax."

In October 2020, Jamie Gray, individually and as special administrator of the estate of Patricia Irene Bishop, filed a complaint and an amended complaint against Pink Bud on Bishop's behalf alleging claims of medical malpractice, negligence, and violations of the Arkansas Residents' Rights Act. Pink Bud moved for summary judgment, alleging that Estate failed to demonstrate a genuine issue of material fact on essential elements of its claims. Specifically, Pink Bud argued that (1) Estate failed to provide expert testimony to establish the applicable standard of care or to support proximate causation pertaining to any alleged injuries sustained by Bishop, and (2) Estate's negligence,

3

wrongful-death, and violation-of-resident's-rights claims are subsumed by her claim for medical malpractice.

Estate responded to the summary-judgment motion, claiming that (1) expert testimony was not required to support the claims, and (2) violations of residents' rights guaranteed by federal and state law are actionable. In support, Estate attached Gray's deposition and an interrogatory response; portions of Bishop's medical records; and an affidavit by nurse Janet Blok Scott attesting that Pink Bud breached the standard of care for nursing homes and violated Bishop's resident's rights, and the failures proximately caused Bishop's death. Nurse Scott attested that her "opinions are within a reasonable degree of nursing certainty."

In reply, Pink Bud maintained that Estate failed to meet its burden to establish causation because no expert testimony demonstrated any causal link between the alleged deviations in the standard of care and Bishop's death. Pink Bud asserted that Nurse Scott's affidavit was insufficient to meet the burden because she is not qualified to opine as to causation.

Following a summary-judgment hearing conducted on September 20, 2023, the circuit court, after reviewing the evidence, entered an order granting summary judgment in favor of Pink Bud. In doing so, the court found that Estate failed to establish a causal connection between Bishop's death and Pink Bud's alleged negligence. The court additionally stated that it was incumbent on Estate to present either a medical opinion on the issue of proximate causation or to present the court with medical records by which the court could reasonably infer such a connection, but the records "fall woefully short of meeting that standard." The court stated that, instead, the records demonstrate that Bishop was an elderly patient with a history of poor health who experienced a slow and steady

4

decline until her death; the record does not attribute Bishop's death to the actions or inactions of Pink Bud. Estate timely appealed.

Summary judgment is appropriate if no genuine issues of material fact exist for trial.[1] Once the moving party has demonstrated an entitlement to summary judgment pursuant to Arkansas Rule of Civil Procedure 56, Arkansas law shifts the burden to the nonmoving party, who must show that a genuine issue of material fact remains.[2] The responding party must meet proof with proof by showing a genuine issue as to a material fact.[3]

To prevail on a motion for summary judgment in a medical-malpractice action, the plaintiff must prove (1) the applicable standard of care; (2) that the medical provider failed to act in accordance with that standard; and (3) that such failure was a proximate cause of the plaintiff's injuries.[4] A medical-malpractice complaint is subject to a motion for summary judgment when the plaintiff fails to present expert medical evidence of those three elements, and the defending party demonstrates that the plaintiff lacks proof on one or more of these essential elements.[5] In order to demonstrate a genuine issue of material fact, the plaintiff's medical expert must state within a reasonable degree of medical certainty that the defendant breached the standard of care and that the

---

[1]*Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116.

[2]*Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

[3]*Id.*

[4]*Webb v. Bouton*, 350 Ark. 254, 85 S.W.3d 885 (2002).

[5]*Robbins v. Johnson*, 367 Ark. 506, 241 S.W.3d 747 (2006).

alleged breach was a proximate cause of the injury.[6] We have held that a plaintiff's failure to produce the requisite expert testimony demonstrates that no genuine issues of material fact exist and that the defendant is entitled to summary judgment as a matter of law.[7]

The circuit court concluded that Estate failed to produce the required expert testimony to prove proximate causation. Here, Nurse Scott stated that, in her opinion, Pink Bud breached the applicable standard of care and that the failures proximately caused Bishop's death. To the extent Estate asserts that Nurse Scott is an expert witness and her affidavit was sufficient to establish causation, we disagree. Although a nurse may be an expert witness as to the standard of care for other nurses, it is not proper for a nurse to offer testimony on the issue of proximate causation since this is outside the area of the nurse's expertise.[8]

Estate contends that, in this case, expert testimony was not necessary to establish causation because medical records confirm and support that Bishop died because of pneumonia she acquired due to the substandard care she received at Pink Bud. Expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his equipment or to remove a sponge from the incision before closing it.[9] While we acknowledge that under limited circumstances there is an exception to the general rule that expert testimony is required, we hold that the narrow exception does not apply here.

---

[6]*Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006).

[7]*Hamilton v. Allen*, 100 Ark. App. 240, 267 S.W.3d 627 (2007).

[8]*Neal*, 2012 Ark. 328, 422 S.W.3d.

[9]*Haas v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996) (quoting *Davis v. Kemp*, 252 Ark. 925, 481 S.W.2d 712 (1972)).

We have said that a plaintiff may proceed on his claim for medical negligence without the required expert testimony, but only if he can establish that (1) the asserted negligence lies within the jury's comprehension as a matter of common knowledge, (2) the applicable standard of care is a matter of common knowledge, and (3) the jury does not need assistance of experts to decide the issue of negligence.[10] In cases of retained foreign objects and improperly sterilized surgical equipment, there is no dispute as to whether the proper course of care was followed; hence, a jury could, relying on common knowledge, find that an infection or injury was proximately caused by such negligence. However, we reject Estate's attempt to frame this medical-malpractice action as one that falls within the common-knowledge exception.

Here, Estate declares that when Bishop entered the nursing home in July 2018, she was largely able to care for herself and needed only minimal assistance with daily living activities, such as eating and pain management. Yet, a relatively short time later, in November, Bishop's health had deteriorated, which led to her death. Estate contends that Bishop's rapid decline is proof that she did not receive the proper standard of care and that her death was proximately caused by Pink Bud's negligence.

We hold that the circuit court did not err in concluding that expert medical testimony was required in this case. Estate presents a simplistic version of the facts and record. However, the record demonstrates that Bishop had a complicated medical history and suffered from numerous medical conditions. Before her admission to Pink Bud in July 2018, she had been a resident of the facility for six months from October 2016 until May 2017. Her second admission and residency at

---

[10]*Daniels v. Lyle*, 2025 Ark. App. 197, ___ S.W.3d ___.

7

Pink Bud, the one at issue, followed a hospital stay for respiratory failure. Medical records detail Bishop's complex and extensive health issues including, but not limited to, chronic respiratory failure, COPD, congestive heart failure, cardiopulmonary disease, diabetes, hypertension, and depression. These medical diagnoses and ailments predate Bishop's admission to Pink Bud. Estate relies on Bishop's diagnosis of healthcare associated pneumonia as evidence that Pink Bud breached the standard of care; however, Estate fails to establish any connection between any specific acts or omissions by Pink Bud that caused the pneumonia or how any acts or omissions could have prevented Bishop from contracting pneumonia. Estate presented no expert medical opinion supporting the contention that acquiring pneumonia in a healthcare setting is the result of negligence. The interplay between Bishop's numerous medical conditions, including her longstanding cardiorespiratory issues, the effects it had on her immune system, and the contraction of pneumonia, is far too intricate to fall within the common knowledge of a jury. We affirm the circuit court's finding that the facts of this case fall within the general rule that medical-malpractice claims must be proved through expert testimony.

Additionally, as to Estate's assertion that many of its claims allege a violation of the Arkansas Residents' Rights Act, in which a different burden of proof applies and does not require expert testimony, we find no merit.

The Residents' Rights Act codified certain rights for Arkansans residing in nursing homes. The Act guarantees individuals living in nursing homes (1) the right to be free from mental and physical abuse; and (2) the right to be treated courteously, fairly, and with the fullest measure of

8

dignity.[11]  The Act allowed for any resident injured by a deprivation of the rights listed above to bring a cause of action against any licensee responsible for the deprivation of infringement.[12]  In 2013, the Act was amended by Act 1196 to eliminate nursing-home residents' right to recover for violations of the Residents' Rights Act.[13]  Instead, they have only one cause of action under §§ 16-114-201 et seq.,[14] the Medical Malpractice Act.  A deprivation or infringement of a resident's rights now does not create an additional cause of action.[15]  Because Estate's claims for negligence, wrongful death, and resident's-rights violations were subsumed under the Medical Malpractice Act, we find no reversible error on this point.

Affirmed.

HARRISON and WOOD, JJ., agree.

*David A. Couch PLLC*, by: *David A. Couch*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Jacob A. McElroy* and *Benjamin D. Jackson*, for appellee.

---

[11]Ark. Code Ann. § 20-10-1204(a)(14), (21) (Repl. 2023).

[12]Ark. Code Ann. § 20-10-1209(a) (Repl. 2023).

[13]*Cauffiel v. Progressive Eldercare Servs.-Saline, Inc.*, 2021 Ark. App. 314, 635 S.W.3d 1.

[14](Repl. 2016).

[15]Ark. Code Ann. § 20-10-1209(d)(1).