Cite as 2025 Ark. App. 441

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-549

TOMIE GRIST

APPELLANT

V.

JOSHUA R. TONEY, AN INDIVIDUAL;
AND JOSHUA R. TONEY, DDS, PA,
D/B/A SANDHILL DENTISTRY

APPELLEES

Opinion Delivered September 24, 2025

APPEAL FROM THE RANDOLPH
COUNTY CIRCUIT COURT
[NO. 61CV-21-93]

HONORABLE ROB RATTON, JUDGE

AFFIRMED

## CASEY R. TUCKER, Judge

Appellant Tomie Grist appeals the decision of the Randolph County Circuit Court granting the motion for summary judgment filed by appellees Joshua R. Toney and Joshua R. Toney, DDS, PA, d/b/a Sandhill Dentistry (collectively "Dr. Toney") and dismissing Grist's medical-malpractice complaint with prejudice. We affirm.

### I. *Facts and Procedural History*

This is a medical-malpractice case stemming from alleged injuries Grist suffered as a result of a dental-bridge section and tooth extraction performed by Dr. Toney at Sandhill Dentistry Clinic in Pocahontas, Arkansas. Dr. Toney treated Grist on October 21, 2019. Specifically, Dr. Toney sectioned a dental bridge and performed a dental extraction on tooth number 30.

On October 20, 2021, Grist filed a medical-malpractice complaint against Dr. Toney. She alleged in the complaint that during the October 21, 2019 dental treatment, Dr. Toney "negligently used such force to extract [her] teeth that he fractured her jaw," causing her "to endure permanent, life-changing injury." Grist asserted medical-negligence claims that Dr. Toney failed to care for and treat her in accordance with the standard of care and skill required of and ordinarily exercised by the average qualified dentist engaged in dental practice at a professional level and failed to disclose the significant risks and the possible foreseeable outcomes of having teeth manually removed.

Dr. Toney answered the complaint on January 19, 2022, denying Grist's allegations of negligence, proximate causation, and damages. On January 20, Dr. Toney served written discovery requests on Grist, including an expert-witness interrogatory requiring Grist to disclose (1) the identity of her anticipated expert witnesses; (2) the qualifications of the witnesses with particular reference to the issues about which they may testify; and (3) the contents of all opinions to which the experts may be asked to testify. In her discovery responses, Grist stated that she was "gathering this information . . . and will provide said list as discovery develops further and she is able to determine necessary expert witnesses."

On June 16, 2022, the circuit court entered an order scheduling a jury trial on April 11–13, 2023. On July 7, 2022, the court entered its amended scheduling order, including agreed-on deadlines for Grist's expert disclosures by no later than September 30, 2022, and Dr. Toney's expert disclosures by no later than October 28, 2022. The scheduling order also

stated that "all discovery, including evidentiary depositions, shall be completed no later than **December 30, 2022**."

Dr. Toney's counsel took Grist's deposition on September 16, 2022. On September 30, the deadline for Grist's expert disclosures, Grist provided an "Expert Witness List" disclosing only the names and basic contact information of four individuals: Dr. Toney; Dr. Sarah M. Greenberger of UAMS Health Hospital; Dr. Mauricio A. Moreno of UAMS Head and Neck Oncology Clinic; and Dr. Danielle Kelvas from Chattanooga, Tennessee, listed as "Expert Medical Witness." After multiple requests by Dr. Toney's counsel for the CVs and opinions of Grist's expert witnesses, Grist provided a "Supplemented Expert Witness List" on October 20, 2022. As to Dr. Kelvas, the only individual identified as an "Expert Medical Witness," the supplemental list provided the following information:

> Expertise: Family medicine, medical consulting, legal medical writing, emergency care, cost reports. Is currently a full time medical consultant and advisor for malpractice litigation, previous experience as a family medicine physician and resident physician.

> Testimony: Dr. Kelvas has experience in both family medicine, emergency care, as well as physician medical law. Dr. Kelvas will provide testimony outlining the life-long costs associated with Plaintiff's injuries and expert opinion regarding patient care and procedure.

None of the individuals identified in Grist's expert-witness lists provided any opinions about the applicable standard of care for the subject dental treatment. Nor were any CVs provided.

On November 14, 2022, Dr. Toney moved for summary judgment on grounds that there was no genuine issue of material fact because Grist had failed to present the required expert testimony to meet her burden of proof on the essential elements of her medical-

malpractice claims—specifically, the applicable standard of care for the dental procedures performed by Dr. Toney. In his supporting brief, Dr. Toney challenged the qualifications of Dr. Kelvas because of the limited information Grist had produced at that point, noting that no affidavit, CV, expert opinion, or other type of documentation had been provided to demonstrate that Dr. Kelvas, who is not a dentist, was otherwise qualified to opine as to the applicable standard of care for the dental treatment in question.

On November 30, 2022, Grist moved for an extension pursuant to Arkansas Rule of Civil Procedure 56(f) to allow her "treating physician" to perform an additional examination, to obtain the physician's written opinions, and to depose the physician. Grist submitted with the motion her attorney's affidavit stating that Grist could not provide a responsive affidavit to Dr. Toney's summary-judgment motion because this "treating physician" needed to examine Grist again. At a December 2 hearing, Grist's attorney identified the "treating physician" as Dr. Moreno and stated that the information was not provided by the deadline for Grist's expert disclosures because "with her condition change, we can't submit an opinion based on her condition then, it has to be now." Grist's counsel explained that Dr. Moreno was not comfortable submitting an opinion without having seen Grist again. Additionally, Grist's counsel represented that "we've disclosed the list of our experts" and she identified deposing Dr. Moreno as "what we would be doing" if the circuit court granted the requested extension. On the basis of these representations, the circuit court ruled from the bench that it was "going to give [Grist] an extension," but only until the December 30 discovery deadline. The circuit court gave Grist ten days from the December 30 discovery deadline to

4

respond to Dr. Toney's motion for summary judgment. The court clarified that *all* discovery, including depositions, must be completed by the scheduling order's previously imposed discovery cutoff of December 30, 2022. The court ordered Grist's counsel to "prepare an order to that effect, circulate it to opposing counsel, and then get it to [the court] for signature." The oral extension order, however, was not reduced to a written order.

Grist thereafter began disclosing new expert opinions, albeit none from Dr. Moreno, whose pending report had provided the basis for her requested extension. On December 16, 2022, Grist disclosed Dr. Kelvas's CV and expert report. Dr. Kelvas's deposition was taken on December 20, 2022.[1] At the close of the business day on December 30, 2022, at 4:58 p.m., Grist disclosed for the first time Connecticut dentist Jack Levine, D.D.S., as an expert witness.

On January 4, 2023, Dr. Toney moved to exclude Dr. Levine's testimony because of Grist's untimely disclosure. Dr. Toney argued that Grist's disclosure was not seasonable— made four months after the September 30, 2022 deadline had passed for Grist to disclose experts and mere hours before the cutoff for all discovery. Dr. Toney contended that exclusion of Dr. Levine's testimony was warranted due to Grist's failure to abide by both "the Arkansas Rules of Civil Procedure and the Court's deadlines regarding expert

---

[1]Also on December 20, Grist disclosed for the first time Lester Sitzes, D.D.S., a dentist practicing in Hope, Arkansas, as an expert witness. The circuit court granted Dr. Toney's motion to exclude the testimony of Dr. Sitzes due to Grist's untimely disclosure. Grist does not challenge the circuit court's decision relating to Dr. Sitzes in this appeal.

disclosures on multiple occasions." Dr. Toney noted, too, that Grist's "untimely disclosure of an expert witness in the final minutes of discovery is inconsistent" with the representations made by her attorney in the December 2, 2022 hearing. Dr. Toney argued that Grist's untimely disclosure "is gravely prejudicial because it prevents Dr. Toney from scheduling Dr. Levine's deposition and obtaining a rebuttal expert to respond to Dr. Levine's opinions."

On January 9, 2023, Grist filed her response to Dr. Toney's motion for summary judgment. In support, she submitted, among other things, the deposition testimony and postdeposition affidavits of Dr. Kelvas.

The circuit court held a hearing on March 1, 2023, on Dr. Toney's motion for summary judgment and motion to exclude Dr. Levine's testimony.

On March 6, 2023, the circuit court granted Dr. Toney's motion to exclude Dr. Levine's testimony. The court found that Grist's disclosure at 4:58 p.m. on December 30, 2022, "was four months after the expert disclosure deadline in the Scheduling Order"; "violated Plaintiff's duty to seasonably supplement her discovery responses as required by Rule 26 of the Arkansas Rules of Civil Procedure"; and "was prejudicial to Defendants because the untimely disclosure did not permit Defendants an opportunity to depose Dr. Levine." Accordingly, as sanctions under Arkansas Rule of Civil Procedure 37, the court prohibited "introduction of any testimony or evidence from Dr. Jack Levine, DDS in the trial of this matter." Consequently, the court did not consider Dr. Levine's affidavit in the summary-judgment proceedings.

On April 10, 2023, the circuit court entered its written order granting Dr. Toney's motion for summary judgment, ruling, in relevant part, as follows:

> A. Under Arkansas law, "[i]n a medical-malpractice action, the plaintiff must prove (1) the applicable standard of care, (2) that the medical provider failed to act in accordance with that standard, and (3) that such a failure was a proximate cause of the plaintiff's injuries." *Quattlebaum v. McCarver*, 2013 Ark. App. 376 (2013).

> B. During discovery, it was revealed that neither Dr. Greenberger nor Dr. Moreno were serving as Plaintiff's expert witnesses. Additionally, it was determined that Defendant Dr. Toney would not serve as Plaintiff's expert witness. As a result, the only remaining witness that was timely disclosed as a potential expert for Plaintiff was Dr. Danielle Kelvas, MD. Ultimately, Plaintiff disclosed Dr. Kelvas as her expert witness to testify as to Dr. Toney's liability and the applicable standard of care. However, upon review of Dr. Kelvas' deposition testimony, it is clear that Dr. Kelvas, who is not a dentist, is not trained, experienced, or knowledgeable of the standard of care in performing dental extractions. The Arkansas Supreme Court ruled that by "failing to establish this standard, any testimony [Dr. Kelvas] gave as to [Dr. Toney's] failure to meet the standard is of no merit because [Plaintiff] never initially established the applicable standard of care. . ." *Williamson v. Elrod*, 72 S.W.3d 489, 492, 348 Ark. 307, 312 (2002).

> C. Furthermore, at her deposition, Dr. Kelvas testified that she is unfamiliar with the locality and therefore, she is unqualified to testify regarding the local standard of care. Arkansas "case law is explicit in requiring expert testimony regarding the standard of care in the same or similar locality." *Plymate v. Martinelli*, 2013 Ark. 194, 3–4, 2013 WL 1932918 at *2 (2013).

> D. Plaintiff has failed to present any evidence of (1) the standard of care for Dr. Toney's treatment of Plaintiff; (2) that Dr. Toney failed to act in accordance with that standard of care; and (3) that Dr. Toney's treatment was the proximate cause of Plaintiff's alleged damages.

> E. Moreover, according to the Arkansas Court of Appeals, a medical-malpractice complaint is subject to dismissal "when the plaintiff fails to present expert evidence of those three elements and the defending party demonstrates that the plaintiff lacks proof on one or more of these elements." *Quattlebaum v. McCarver*, 2013 Ark. App. 376 (2013). Here, it has been

7

determined that Plaintiff cannot present any evidence of the required elements. Without this proof, pursuant to Rule 56 of the Arkansas Rules of Civil Procedure, there is no genuine issue of material fact.

F. Because Defendants have "demonstrate[d] the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to summary judgment as a matter of law." *Hamilton v. Allen*, 100 Ark. App. 240, 249, 267 S.W.3d 637 (2007).

This appeal followed.

## II. *Standard of Review*

On appeal, we decide if the grant of summary judgment was appropriate by determining only whether the evidence left a material question of fact unanswered. *Stewart v. Deaton*, 2021 Ark. App. 73, at 4, 618 S.W.3d 181, 185. Once the moving party has demonstrated an entitlement to summary judgment, Arkansas law shifts the burden to the nonmoving party, who must show that a genuine issue of material fact remains. *Duke v. Mullis*, 2024 Ark. App. 419, at 5, 699 S.W.3d 144, 147–48. At this point, the responding party "'must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Id.*, 699 S.W.3d at 148 (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000)).

In an action for medical injury, unless the asserted negligence can be comprehended by a jury as a matter of common knowledge, a plaintiff has the burden of proving three propositions by expert testimony: (1) the applicable standard of care; (2) the medical provider's failure to act in accordance with that standard; and (3) that the failure was the

proximate cause of the plaintiff's injuries. Ark. Code Ann. § 16-114-206(a) (Repl. 2016).[2] A

medical-malpractice complaint is subject to a motion for summary judgment when the

plaintiff fails to present expert medical evidence of those three elements, and the defending

party demonstrates that the plaintiff lacks proof on one or more of these essential elements.

*Gray v. E.R.R.S., Inc.*, 2025 Ark. App. 327, at 5. To demonstrate a genuine issue of material

fact, the plaintiff's medical expert must state within a reasonable degree of medical certainty

that the defendant breached the applicable standard of care and that the alleged breach was

a proximate cause of the injury. *Id.* at 5–6. A plaintiff's failure to produce the requisite expert

testimony demonstrates that no genuine issues of material fact exist, and the defendant is

entitled to summary judgment as a matter of law. *Duke*, 2024 Ark. App. 419, at 6, 699

S.W.3d at 148. The defendant is not required to support its motion with affidavits or other

materials further negating the plaintiff's claim. *Id.*

III. *Arguments on Appeal*

Grist raises six points on appeal, arguing that the circuit court erred in granting

summary judgment. Because Grist's last point raises a threshold issue of whether expert

testimony was required to support her medical-negligence claims, we address it first. Grist

argues that expert testimony was not required because "certain of the issues" in this case are

within the common knowledge and experience of a jury: (1) a failure by Dr. Toney to comply

---

[2]The portion of this statute limiting expert opinions to medical-care providers of the same specialty as the defendant was held unconstitutional in *Broussard v. St. Edward Mercy Health System, Inc.*, 2012 Ark. 14, 386 S.W.3d 385.

with his own intake procedures; (2) the need to identify preexisting chronic conditions; and (3) the need to make postoperative treatment recommendations when injury occurs. We disagree.

It is well settled that a plaintiff must present expert testimony when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence. *Gray*, 2025 Ark. App. 327, at 7. While we acknowledge that under limited circumstances there is an exception to the general rule that expert testimony is required, we hold that the narrow exception does not apply here.

Classic examples in which the essential elements for medical negligence are satisfied without the need for expert testimony include instances when a surgeon might fail to properly sterilize surgical instruments or remove a sponge before closing an incision. *Gray*, 2025 Ark. App. 327, at 7. In these limited cases, "there is no dispute as to whether the proper course of care was followed; hence, a jury could, relying on common knowledge, find that an infection or injury was proximately caused by such negligence." *Id*. In the vast majority of cases, however, expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury as a matter of common knowledge. *See, e.g.*, *Mitchell v. Lincoln*, 366 Ark. 592, 599, 237 S.W.3d 455, 460 (2006) (collecting cases). Moreover, our supreme court has said that negligence related to dental treatment is a matter that would not be within the common knowledge of a jury; therefore, qualified expert testimony is required.

*See Robson v. Tinnin*, 322 Ark. 605, 611, 911 S.W.2d 246, 249 (1995) (requiring expert testimony for allegations of negligence related to the changing of dental implants and treatment of a fractured tooth).

Here, according to Grist's proffered expert, Dr. Kelvas, Grist had extensive comorbidities that predated the subject dental treatment. Dr. Kelvas testified in her deposition that Dr. Toney failed to do a proper intake relating to the medications Grist was currently taking, which included the drug Prolia for a preexisting condition of osteoporosis, and that Dr. Toney did not properly follow up with Grist after performing the dental-bridge section and tooth extraction. Dr. Kelvas opined in her report "with a high level of medical certainty that [Grist's] tooth extraction should have been performed by an oral surgeon, not a dentist." As noted, Grist's medical-malpractice complaint alleges that Dr. Toney's negligence in performing the dental-bridge section and tooth extraction was the proximate cause of Grist's injuries—a broken jaw and related complications. We cannot say that the interplay between Grist's comorbidities and the allegations of negligence relating to Dr. Toney's performance of the dental-bridge section and tooth extraction is so straightforward that it can be considered a matter of common knowledge. Quite the opposite. Accordingly, we affirm the circuit court's finding that the facts of this case fall within the general rule that medical-malpractice claims must be proved through expert testimony.

Additionally, we find no merit in the overlapping arguments raised in Grist's first and third points on appeal. Grist argues that (1) Dr. Toney's motion was factually insufficient to establish a prima facie entitlement to summary judgment; (2) the motion was rendered moot

11

by the circuit court's oral order granting Grist's request for a continuance to obtain an expert report to support her opposition to summary judgment pursuant to Rule 56(f); and (3) the circuit court improperly considered Dr. Toney's reply brief.

At the outset, Grist's reading of Dr. Toney's summary-judgment motion is overly narrow. The motion was not limited to the issue of Grist's failure to comply with the circuit court's scheduling order in disclosing Dr. Kelvas's opinions, as Grist contends. Dr. Toney sought summary judgment on the basis that Grist could not support her medical-malpractice claims with qualified expert testimony. More specifically the limited information Grist had disclosed did not establish Dr. Kelvas's qualifications to opine concerning the applicable standard of care for the subject dental procedure.

Dr. Toney's motion, moreover, was supported by the attached, albeit scant, information Grist had provided in her "Expert Witness List" and "Supplemented Expert Witness List" when the motion was filed on November 14, 2022—more than a year after the action had been filed, almost ten months after Dr. Toney had served his initial expert-discovery requests, over four months after the circuit court had entered its scheduling order, and almost two months after the agreed-on deadline had passed for Grist to produce expert disclosures. As noted, these documents simply stated that Dr. Kelvas is a "medical consultant and advisor for malpractice litigation," with previous experience in family medicine, emergency care, and physician medical law, who "will provide testimony outlining the life-long costs associated with Plaintiff's injuries and expert opinion regarding patient care and procedure." The documents provided no explanation as to how Dr. Kelvas was

12

knowledgeable by either training or experience as to the standard of care for dental patients, and Grist did not timely disclose any other information about Dr. Kelvas's qualifications, education, or experience from which the circuit court could have concluded that she was a qualified medical expert.

When a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which she is not directly engaged but to which she has an opinion based on education, experience, observation, or association within that specialty, her opinion is competent. *Reggans v. Schlesinger*, 2024 Ark. App. 227, at 10–11, 687 S.W.3d 387, 394. However, when a doctor's statements as to her qualifications are vague and conclusory, they fail to establish a sufficient familiarity with the particular field at issue by which to render an expert opinion. *Id.* at 11, 687 S.W.3d at 394.

The vague and conclusory bullet-point statements in Grist's expert-witness lists were insufficient to establish that Dr. Kelvas was qualified to render an expert opinion in the case. *See Stewart*, 2021 Ark. App. 73, at 8–10, 618 S.W.3d at 186–87 (affidavit that identified the witness as a physician but did not include witness's CV did not provide sufficient information to qualify witness as expert); *see also Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 199, 204 S.W.3d 579, 584 (2005) (vague and conclusory statements as to witness's qualifications did not establish sufficient familiarity with fields of psychiatry or psychology in order to render expert opinion). Accordingly, the circuit court properly determined that Dr. Toney satisfied his initial burden of establishing a prima facie entitlement to summary judgment. *See Robson*, 322 Ark. at 612, 911 S.W.2d at 249 (holding that defendant met the

burden of proving a prima facie case for summary judgment by showing that plaintiff had no expert to testify to the applicable standard of care and breach by defendant).

Grist, moreover, seemingly recognized that the burden had shifted to her to show the existence of a material issue of fact issue when, instead of responding to the motion, she requested a continuance pursuant to Rule 56(f)[3] to obtain a forthcoming expert opinion, which she deemed necessary to support her opposition to summary judgment. The circuit court granted the requested continuance, allowing Grist additional time both to obtain the expert report and to respond to the motion for summary judgment. The grant of this continuance, however, did not render moot the pending summary-judgment proceedings, as Grist would have it. Generally, an issue is considered moot if any judgment or opinion issued by the court would have no practical effect upon a then-existing legal controversy. *Hemp Health, LLC v. Ark. Dep't of Hum Servs.*, 2022 Ark. App. 193, at 4, 644 S.W.3d 829, 832. Here, the continuance merely gave Grist additional time to obtain affidavits from her experts to support her response in opposition, thereby allowing her an opportunity to meet proof with proof to demonstrate the existence of a material issue of fact. Grist thereafter submitted her newly obtained proof with her response in opposition. In reply, Dr. Toney addressed the

---

[3]Rule 56(f) provides, "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

issue of Dr. Kelvas's qualifications in the light of this proof. Under these circumstances, we also cannot say that the circuit court improperly considered Dr. Toney's reply brief.

Likewise, we can easily dispose of Grist's second point on appeal because it, too, suffers from a fatally narrow construction of the summary-judgment proceedings. Grist argues that the circuit court erred in granting summary judgment on the basis of Dr. Toney's "sole legal assertion" that a dentist is required to provide expert testimony as to the applicable standard of care for the dental procedure at issue. Dr. Toney, however, expressly acknowledged that an expert need not practice in the "same specialty" as the defendant to opine on the standard of care in a medical-malpractice action. And the circuit court ruled that "upon review of Dr. Kelvas's deposition testimony, it is clear that Dr. Kelvas, who is not a dentist, is not trained, experienced, or knowledgeable of the standard of care in performing dental extractions." Grist's argument, therefore, is entirely without merit.

Turning to her fourth point on appeal, Grist challenges the circuit court's determination that Dr. Kelvas was not qualified to offer an expert opinion in the case. In making this determination, the circuit court concluded that "upon review of Dr. Kelvas' deposition testimony, it is clear that Dr. Kelvas, who is not a dentist, is not trained, experienced, or knowledgeable of the standard of care in performing dental extractions." The court also concluded that "at her deposition, Dr. Kelvas testified that she is unfamiliar with the locality and therefore, she is unqualified to testify regarding the local standard of care." We find no merit in Grist's argument.

The determination of an expert witness's qualification is within the sound discretion of the circuit court. *Stewart*, 2021 Ark. App. 73, at 8, 618 S.W.3d at 186. When, as in this case, a circuit court grants a motion for summary judgment due to the exclusion of the plaintiff's standard-of-care witness, the appeal ultimately turns on whether the circuit court abused its discretion in determining that the proffered witness is not a qualified expert. *Id.* It is undisputed that Dr. Kelvas is not a dentist. As noted previously, when a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which she is not directly engaged but as to which she has an opinion based on education, experience, observation, or association within that specialty, her opinion is competent. *Id.* at 9, 618 S.W.3d at 186. Further, under Arkansas Code Annotated section 16-114-206(a)(1), the expert witness in a medical-malpractice case must demonstrate knowledge of the standard of care in the subject locality. "In order to meet the locality requirement, there must be an attestation by an expert regarding this locality or a similar one." *Plymate v. Martinelli*, 2013 Ark. 194, at 3–4. Thus, "the expert must have sufficient knowledge of the locality where the alleged negligence occurred to be able to identify localities that are similar." *Shaffer v. Young*, 2010 Ark. App. 97, at 2–3.

Dr. Toney's dental treatment consisted of sectioning a dental bridge and extracting tooth number 30. Dr. Kelvas's deposition testimony unquestionably fails to demonstrate the existence of a material fact as to whether she had sufficient knowledge of the applicable standard of care in the subject locality. According to her testimony, Dr. Kelvas is a medical doctor currently employed as a medical writer. She graduated medical school in 2018,

16

received one year of residency training in emergency medicine but never completed residency training in any field, and worked for a year and a half at a family-medicine clinic. Her training and experience occurred in Tennessee and Missouri.

As to her experience in the field of dentistry, Dr. Kelvas testified that she had traveled to different countries "shadowing and assisting on medical mission trips in a variety of surgical specialties." This included "four or five days" in Honduras, where she worked with dentists who taught her "the art of extracting different types of teeth" and particularly "how to be careful with shards, especially as it pertains to intubation and things." According to the "Community Service" section in her CV, Dr. Kelvas participated in this volunteer mission trip to Honduras in May 2013—before she attended medical school.

Dr. Kelvas clarified in her deposition testimony that, as a medical professional, her experience in the field of dentistry was limited to her one-year training in emergency medicine where she stabilized emergency dental issues to get the patient to a dentist. She admitted that she is not permitted to perform routine dental extractions but rather only extractions in an emergent setting. She also admitted that Grist's dental extraction was routine and not in an emergent setting.

When asked about her knowledge of the standard of care in sectioning a dental bridge, Dr. Kelvas testified, "As far as actually putting them in, that's outside my scope of practice because I'm not a dentist[,]" explaining that "we don't do those things in the ER." When asked if she was familiar with the dental tools used to section a dental bridge, she testified, "No, because I'm not licensed or certified to use to them." When asked if she was

familiar with the dental tools used to perform a dental extraction, she testified, "Some of them. But, like I said, I'm not a licensed dentist." Additionally, she testified that she is not aware of the tools that are used in a dental office to extract teeth. When asked about her familiarity with the standard of care to perform dental surgery, she testified, "Some of them, not all of them. But it's because I don't do them. I'm not a licensed dentist." When asked about her ability to interpret dental x-rays to determine whether a dental extraction is needed, she testified, "No. That's outside my scope." She also testified that she had absolutely no knowledge of the dentists, dental facilities, or dental services available in Pocahontas, Arkansas.

From her roughly three years' combined experience in emergency medicine and family medicine, Dr. Kelvas opined that "it's highly likely" that Grist's jaw fracture was caused from the tooth extraction performed by Dr. Toney. She admitted, though, that it is possible that something other than the extraction caused the fracture. To that end, she testified that Dr. Toney also breached a "universal standard of care" for medical professionals in failing to get a "proper medication list," "allergy list," and "past medical history" on Grist and by doing "virtually no follow-up." While she conceded that Grist "probably needed the tooth pulled," she opined that because Grist was "high risk," Dr. Toney should have referred her to an oral surgeon instead of performing the extraction himself. She admitted, however, that she did not know how an oral surgeon's treatment would have differed from Dr. Toney's treatment.

18

Under Arkansas law, Dr. Kelvas's deposition testimony cannot be revised by her blatantly contradictory postdeposition affidavit to defeat summary judgment. *See Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 758, 911 S.W.2d 586, 590 (1995). And considering Dr. Kelvas's deposition testimony, we cannot say that the circuit court abused its discretion in determining that Dr. Kelvas is not a qualified medical expert. Accordingly, we affirm the grant of summary judgment.

Finally, in her fifth point on appeal, Grist argues that the circuit court improperly excluded the testimony of Dr. Jack Levine. We disagree. We will not reverse a decision by the circuit court excluding the testimony of an expert witness on the basis that the witness was not timely disclosed absent an abuse of discretion. *Corbin v. Baptist Health, Inc.*, 2016 Ark. App. 212, at 3, 490 S.W.3d 317, 319. The imposition of sanctions for failure to seasonably supplement or comply with discovery orders rests within the circuit court's discretion, and the exercise of discretion in granting Rule 37 sanctions for violations is "repeatedly upheld." *Hankook Tire Co., Ltd. v. Philpot*, 2020 Ark. App. 316, at 14, 603 S.W.3d 614, 623.

Arkansas Rule of Civil Procedure 37(e) provides that "[i]f a party fails to supplement seasonably as required by Rule 26(e), and another party suffers prejudice, then upon motion of the prejudiced party made before or at trial, the court may make any order which justice requires to protect the moving party, including but not limited to imposing any sanction allowed by subdivision (b)(2)(A)–(C)." Rule 37(b)(2) "provides for sanctions if a party fails to obey an order to provide discovery, including prohibiting introduction of designated matters

19

into evidence." *See Pham v. Nguyen*, 2019 Ark. App. 500, at 3, 588 S.W.3d 427, 429 (affirming exclusion of untimely disclosed expert report in violation of scheduling order).

Grist argues that the circuit court's exclusion of Dr. Levine's testimony as a discovery sanction was not appropriate because the circuit court's "non-memorialized extension order" was "not clear regarding discovery cut-off." This argument is unpersuasive. It was Grist's responsibility to memorialize the oral rulings in a written order pursuant to the circuit court's instructions at the December 2, 2022 hearing. Additionally, it was Grist who asked for the extension, and the basis for which was so that she could obtain a report and take the deposition of a previously disclosed expert, Dr. Moreno. Grist, moreover, represented to the circuit court that she had disclosed the identities of her expert witnesses by the scheduling order's deadline for plaintiff's expert disclosures. The circuit court's rulings, moreover, were crystal clear that all discovery must be completed by December 30, 2022. The circuit court correctly found that Grist's disclosure of a new expert at the close of the discovery cutoff was extremely prejudicial to Dr. Toney because it left him with no opportunity to depose Dr. Levine or to obtain a rebuttal expert. Accordingly, we hold that the circuit court's decision to exclude Dr. Levine's testimony as a sanction for Grist's discovery violations was not an abuse of discretion.

Affirmed.

HARRISON and MURPHY, JJ., agree.

*Jeremy B. Lowrey*; and *Edmondson & Shackleford, PLLC*, by: *Brittnee Edmondson*, for appellant.

*Wright, Lindey & Jennings LLP*, by: *Michael A. Thompson*, *Antwan D. Phillips*, and *Daveante Jones*, for appellees.